23-2794 Western Missouri, Veera Daruwalla et al. v. Cassie Hampe 23-2798 Western Missouri, Veera Daruwalla et al. v. John Pence I'd like to start out by addressing a couple of false statements in class council's briefing. We are delaying nothing. In no way is Ms. Hampe's appeal holding up settlement distribution. That's a misrepresentation meant to preserve an excessive fee. The settlement says fees don't affect finality. Ms. Hampe's objection was always limited to attorney's fees, so she could have never delayed settlement distribution. We're not delaying settlement distribution. The parties are. Another point is Ms. Hampe could have never filed her objection to an extract and improper payment because under amended rule 23E5B, any compensation to an objector must specifically be approved by the district court. And of course, that can only happen if there's a material benefit conveyed to the settlement class. Ms. Hampe filed her objection. When was that amendment implemented? It went into effect December 2018. What was the impetus for that amendment? Well, I mean, there are many, and I'm not sure what the plural of impetus is, but many reasons for that. There are multiple changes to the rule, but that particular one was to try to avoid objectors settling their appeals for nothing, essentially for compensation to the objectors. But under amended rule 23E5B, now the district court has to approve any settlement with an objector, even while on appeal. And so it's impossible for an objector to just simply extract a payment as part of his or her objection. And so I'd like to address, if I can briefly in my time, three points. Number one, it's our position that the court committed methodological error by awarding $78 million in attorney's fees without adjusting this circuit's methodology to when you have a settlement reaching into the hundreds of millions of dollars. And if you fail to do so, then the risk is a windfall fee to the attorneys. This settlement and this fee has all the telltale signs of a windfall fee. We have 76 million class members, and the weight of their claims resulted in a very quick settlement. We have attorneys who have settled these types of classes across the nation, large-scale settlements. It took them five months of work. They incurred $6 million in lodestar as of the time of the settlement and the fee motion, and they got paid $78 million, which amounts to essentially a 10 multiplier. They got paid between $7,000 and $9,500 per hour. So this is exactly the kind of case that causes the public to scoff at class actions. My client gets $25, and these attorneys are walking away with $7,000 to $10,000 per hour. Four of six circuits to address the economies of scale issue have come up with some sort of variation in their fee methodology to account for this phenomenon. The second circuit did it, by the way, in a case with the exact same 9.6 lodestar multiplier. The multiplier here nearly doubles what this court has said is the outer range of reasonableness for a lodestar multiplier, which is 5.6, and that's in this court's Hoyer and Caligari opinion. We'd urge this court to recognize that some adjustment is necessary to its methodology for fees in this unique context. Alternatively, at the very least, if the court declines to adjust its methodology, it's an abuse of discretion to award attorneys 10 times their normal hourly rates, especially when their hourly rates are already high. Class counsel themselves even suggested a reduction in the reply during the fairness hearing, I think from $78 million to $48 or $52 million. That is at record page 1033 and 1055. Otherwise, we would ask the court to reverse the order striking our objection. It's based on Rule 1 and Rule 12, and this court has held that interpretation of the federal rules of civil procedure is a legal question that's reviewed by this court de novo. Rule 12 applies to pleadings, and pleadings are defined by Rule 7, and guess what's not on the list? Objections. The courts have uniformly said that it is a finite list, so Rule 12 is not a viable legal ground to strike an objection. Rule 1 doesn't say anything about striking objections. No court has ever held that's an appropriate vehicle for striking an objection. Otherwise, they say that the court was going off a finding of bad faith, but as this court has recognized, for a court in its inherent power to enter bad faith sanctions, it's got to make a finding of clear and convincing evidence. There's no finding of clear and convincing evidence. In fact, there is no evidence of bad faith. Finally, we would urge the court to reverse the revocation of my PROACT BJA admission and that of my co-counsel. Again, it's supposedly based on a finding that we delayed the proceedings, but as I stated at the outset, that was always impossible because we asserted a complaint, an objection, just as to attorney's fees. And again, under the plain terms of the settlement, which they haven't refuted at all, a challenge to fees cannot delay a distribution. So I'd like to reserve the remainder of my time. Does the delay of the fees as a practical matter delay distribution because it's impracticable to have two separate distributions? Well, that's their argument, but my response to that is that if you don't request a fee that breaks all records in which you're requesting 10 times your load start, then that's not a problem. And since you have requested that sort of an egregious fee, that class counsel should have to pay for a secondary distribution, whatever that's going to be, you know, $1 million, $2 million. That's something that can be resolved, but I don't think that's a valid basis for saying that we're delaying the settlement. It's not true. It's not what the settlement provides. You're saying if the fee award were reduced and there were a second distribution under the way you think it should proceed, then you think the court could require counsel to pay out of its own fee for the second distribution? Yes, Your Honor, and we cited a case in our reply brief to that effect, and I'll have to look at it. I can't recall the style of it offhand. Okay. Unless there are questions, I'll reserve my time. Go ahead. What's the effect of the revocation of the Pro Hoc Vici admission? Does that mean if we were to remand that you would not be able to appear? Would that be the practical effect? If we didn't reverse that. I think so. I'm looking at what the effect is. I think that's correct. We have local counsel who is here, Mr. LaCroix, and I'm sure he would go forward in the case. I just wanted to test the facts there. Thank you. What about on this bad faith question? The judge didn't specify a standard of proof. Correct. So we don't know what he would have said if asked whether this was a finding by clear and convincing versus preponderance or some other standard. That's fair. Are you saying that we should remand it for a specification as to standard of proof and then review whether there was sufficient evidence if he makes the finding again? Well, I think you can say that since there is no evidence of bad faith, we didn't delay proceedings. We could never have extracted an improper payment. You want us to say as a matter of law there could not have been clear and convincing. But alternatively, I'll take a remand because I don't think there's any way you could find clear and convincing evidence. I understand. Thank you. I'll reserve my 28 seconds. You may. Okay. Thank you. Mr. Pence, we'll hear from you. Yes. Good morning. May it please the Court. John Pence on behalf of the estate of Connie Pensapella. The Johns, in fact, I know Mr. Klor has argued for the adoption by this circuit of a mega fund rule, and I certainly endorse that and agree with it, but I don't think you need to do that to agree with us that this fee award needs to be reversed based solely on the Johnson factors, which dictate a lower fee. Once the Court did a lodestar crosscheck and came up with the number 13.1, it needed to justify that number by the other factors in the Johnson test, and the Court seemed to think that risk somehow did it. But this was a very low-risk case. It only took seven months from filing to settle. There were 35 firms vying for class council status. When the Court looked at similar cases, it should have looked at the mega fund empirical studies that have been done by several academics. Instead, it cherry-picked several cases from the Eighth Circuit that settled for about $80 million. Well, those are not mega funds, and in those cases, the fee awards were between 25% and 30%, but in the much larger cases like this one, $350 million, fee awards have averaged between 10% and 12%. So my argument was start with that number, then do the crosscheck, then see if you need to lower it or raise it. There are certain cases where the lodestar might be high enough that a 10% fee, 10% of $500 million may not be adequate, but in this case, it was more than adequate, and it should have constituted the fee award. What's the basis for the 10%? There was a study by Eisenberg and Miller that was cited in my objection in my brief. I guess we have a battle of studies. Then there's another one by Fitzpatrick. His is a little higher, but still, I think it came in around 17%. So it's still well below 22.5%, and in a case this large, that 5% makes a big difference. But the court never really grappled with the 13 and what it means. If that's going to be upheld, then Hoyer— Just slow down. What's the 13? Which number? 13 is the fee that was awarded divided by class counsel's lodestar, excluding the future— That's the multiplier? Excluding the multiplier, the lodestar multiplier. That excludes future time, because future time, whether it's compensated separately or not, should certainly not be enhanced by a risk multiplier, because it's risk-free. Because the money will be in the bank by then, and they're guaranteed of getting paid. So the risk— Suppose we were to decide that the district court erred as a methodological matter and not adopting some sort of sliding scale or megafund approach. What do we do then? Do we just reverse and say, use this new methodological construct, or do we just pick a number? You mean render, Your Honor? Just tell them what the fee should be, period. Well, I would— Is this a reverse— Well, I don't think— I'm sorry, wait, wait. Sorry, Your Honor. I beg your pardon. Do you want us to remand for a do-over? Or do you think that as a matter of—that we could hold as a matter of law that the fee ought to be X? Well, if this court is going to adopt what it characterizes as a new standard, I think in that case it would only be fair to remand and give the district court judge the first opportunity to apply that new standard. I don't think it's a new standard. I think the Johnson factors themselves dictate a lower fee here. If this case— What should we do then? What do you want us to do? You want us to say this is the number? Well, if 5.6 is high, which is what this court said in a prior case, and 13 is also just high, then the next case is going to be 25, and that will also be high. There's no upper limit, essentially. What number do you want? Well, that's a— Do you want us to pick a number? Do you want the district court to pick one? I'm just asking as a practical matter, what am I supposed to do if you're correct? Well, I don't know if any circuit has ever set an upper limit on Lodestar multipliers, but from the jurisprudence reading the cases, it's very rare that it goes much above 5. There may be a few outliers out there, but— It sounds like you don't want us to pick a number. It sounds like you want us to remand it and say the Johnson factors don't support this award. It should be lower, but have the judge pick a different number. Is that how you want us to go about it? If I had my preference, this court would pick a number. All right, now you're— It took a long way to get to that. The next question is, what's the number and why? Now I'm thinking that I did say in my brief, I said in my brief there might be a case where the risk is so high that a 13 is justified. This is not it, but I don't know. Do you want to take a number off the table for somebody who tries a case against all odds and wins? I don't know, but that's the kind of case where you would see a multiplier approaching double digits. You don't want to pick a number because you want to be able to appeal again? No, no, I haven't—I'll take six, Your Honor. I'll take six. And then I would just say with regard to the depots, you know, objecting is not supposed to be expensive. That's what Schutz said. And if you're going to depose class members who object in class action settlements, you're going to get fewer of them, and you're going to get less competent ones that don't have counsel. And you've got to have counsel. If you look at the other objections in this case, I invite Your Honors to read them. You'll see why they never really make any impact at all. Mr. Pence, just one quick question. Your client is deceased, right? Yeah, my mother is deceased, yes, Your Honor. Has the estate been substituted or anything? Well, I'm the executive of her estate, but I have not formally filed the papers here in this court. But I will if you'd like. I just wonder if there's some problem of whether she's actually a party, given that, unfortunately, your mother is deceased. Yes. Okay. Well, the party interest, I believe, would be her estate, Your Honor. Thank you. Thank you. All right. Thank you for your argument. Mr. Wilders, we'll hear from you. May it please the Court. The appellants must show two elements to obtain reversal of the fee award in this case. First, they must show that the district court abused its discretion in striking the objections, because without that, they're not proper parties to the appeal. And second, they must show that the district court's award was the result of an abuse of its substantial discretion to award fees. Respectfully, they show neither, and I'm going to start briefly with the motions to strike and the order striking the objections. We agree that objectors play an important role in class actions, and giving class members the opportunity and their attorneys the opportunity to raise arguments, present evidence, and raise concerns with the district court is an important part of the Rule 23 process. However, as the commentators to the Rule 23 amendments note and the Manual for Complex Litigation and several jurists have noted, serial objectors counsel can distort and play a detrimental role in that process. These objectors, serial objectors, are motivated not by an improving an unfair settlement or producing a fee award, but by using family members and friends who happen to be class members to object to a settlement with the hopes that they can extract a fee from class counsel to accelerate the process for the class to be paid. In this case, there were 13 objections filed by class members, which was a very, very small amount given the 76 million class members in the case. Nine of them had concerns about the fee award. There were only two that class counsel sought to depose and ultimately move to strike, and those two are represented by the Bandus Law Firm and Mr. Pence, both of whom multiple courts have noted were serial objectors counsel who continually raised bad faith objections in an effort to secure pecuniary gain for themselves. No one here disputes that the review for the order striking the objections is an abuse of discretion. Now, they were stricken for two different reasons, but let me start with what's common about them. Before you go there, your briefs and you again today have said that I think essentially if the objections were properly granted, they're not proper parties. Why aren't they proper parties to argue that the objection, the striking of the objection was improper? They're proper parties to challenge the striking of the objection, but if the objections were properly stricken under the Supreme Court's Devlin case, they're no longer a proper party to challenge the fee award on appeal. I don't understand that semantics because if the objection was proper, we affirm the case is over, right? If the objection was proper, I think what you may be saying is if the objection was not frivolous, it was proper. I'm just assuming there was no abuse of discretion in striking their objections. I'm sorry. If that's true, it's just an affirm. It's not that they're not a party. I don't even understand. Of course they're a party. Yes, if it's stricken, I believe the appropriate result is affirmance. So you can decide it on either basis. Let's then go to that. I think their argument is that it's not proper under Rule 12 and Rule 1. That seems to be, at least on the face of it, a pretty reading of the rules. So on what basis can the court do what it did? The Pence objection is unique from the Hampey objection. The Pence objection is that it was stricken because she did not appear for her duly noticed deposition. And having not appeared for her duly noticed deposition, the court had the inherent authority to issue a sanction. And not only did she not challenge the order permitting class counsel to take her deposition, and so challenging that on appeal is under plain error, which I have not heard the appellant argue, but she also did not challenge the motion to strike the objection. So that is also reviewed under plain error. And on appeal, what Mr. Pence has now claimed is, well, the objection wasn't necessary because even though she did not disclose that he was representing her in the district court below, which the district court's preliminary approval order required everyone to disclose if they had an attorney to help weed out bad faith objections, now he, on appeal in his blue brief at page 75, or excuse me, 38, notes that he admits that he helped draft the objection, which would be a separate basis for the district court to have stricken it because that was supposed to be disclosed as well. So we think that's a triple fatality for the Pence objection, which is she waived the appeal to her deposition, she waived any challenge to the motion to strike, and she discloses even a new reason for the district court could have relied upon to find her objection waived. The Hampe objection is a little more involved on the facts. The Hampe objection, the district court did find that there was bad faith by the Hampe. Why don't you get to the question? You don't seem to want to argue that this is proper under Rule 12. Are you abandoning that? You agree it's not a pleading and therefore that can't work, so you've got to go to bad faith. Is that where we are? I don't say we would abandon it. I would say that we haven't found a circuit court case that interprets Rule 12 in that manner. We did cite district court cases below, and the district court relied on district court cases that have applied that. We think it does follow that an objection is technically a pleading for purposes of the objector because it's the only thing they file in the case to make them a proper party to the action for purposes of challenging the settlement or the fee award. But even if Rule 12 does not apply, I think there is bad faith here. There was conduct, both a history by the Bandis law firm, which is unrefuted. They made admissions in a prior case that they had placed their self-interest above ethical considerations. They admitted that they were committed unethical. Does that mean then that all future objections are bad faith, or do you have to look at the particular objection? I don't think it means all future objections are in bad faith. What was unique about this case in particular is that the pattern of misconduct that they had engaged in before, using a family member to file an objection, is exactly what occurred here. Ms. Hampe testified that she received the notice of the settlement. She discussed it. She had previously objected for the Bandis law firm. She discussed it with her husband, who himself had objected on four separate occasions with the Bandis law firm, including one in which the court declared that the objection was vexatious. They then collectively decided to send it to the law firm purportedly over concerns about the $25 alternative cash payment, which was not the minimum amount, which was only the minimum amount that people can get under the settlement. Then the Bandis law firm came back and said, we think you should object to the fee award, is essentially what happened. In that case, we think that that, and the district court found that that suggested that this was a continuation of the pattern of misconduct that they had been cited for previously. And I think that was sufficient evidence for the court to find that there is a reasonable inference of bad faith. And I would note on the- About clear and convincing. Yeah, I was going to get to that. Thank you. So the cases that they cite for clear and convincing involve the sanction of dismissal or default judgment. And we believe this court has applied the preponderance standard in lesser sanctioned circumstances. For example, in the Schlafly v. Eagle case, 970F3-924 in 2020, the court addresses affirming an inherent authority award of sanctions. That was not made under the clear and convincing evidence standard. I can also cite, there's a Seventh Circuit case, I think, that discusses this preponderance versus clear and convincing issue, 845F3-772. And I think that the clear and convincing evidence standard applies when the sanction is particularly punitive, as opposed to remediating something that has been done in bad faith and trying to put the harmed party back to where they were without the bad faith, which is what would occur here if the objection is stricken. So the bad faith is, I gather, tied to, I think what's been referred to as the law firms trying to extract money. How does that work? I mean, I'm thinking if they were successful, it just reduces the attorney fee award. I'm not sure how they, and maybe it increases from $25 to $50 or whatever that the individual class members, how does the firm extract money for a bad faith? Well, it's really the delay associated with the implementation of the settlement. And as Judge Colleton, Chief Judge Colleton noted, there is a practical issue, but there's also an issue with, in particular, the settlement agreement doesn't become effective until the final judgment is affirmed on appeal. And that's at 541 of the Hampe Appendix. Because the settlement doesn't become effective, T-Mobile is not obligated to fund it until all appeals have been resolved, even if the fee award is not going to change the ultimate approval of the settlement. And we've asked T-Mobile if they'll start implementing some of it, and they've declined. And so we're kind of at the point now where we can't implement the settlement because an appeal is ongoing. Okay, but would you answer my question? Because I think it's been referred to by the district court and by you that these firms are improperly trying to extract money. Isn't the idea that they come to you and say, in order to stop the delay, in order to dismiss our appeal, we want you to give us X dollars? That's correct. I mean, basically, it's the length of the appellate process, rehearing, cert. They extort class counsel to say, why don't you just pay us to go away, and then we'll drop our appeal. That's how it typically happens. We'll drop our appeal, and we'll go away for this fee. Now they have to get approval by the court for the fee, but the evidence shows that even when that occurs, the relief they obtain for the class is very de minimis, and that just gives them the opportunity to go seek their fee. They cite the Syngenta case from the Tenth Circuit. In that case, they got a $900,000 fee for increasing the settlement by $3 million, which was ultimately across 150,000 class members, 0.2% increase in the overall fee. So the bad faith is using this as leverage to settle? That's right. But with the Syngenta case, you're saying that was bad faith, or what's your point there? I mean, they prevailed on appeal and got a fee for it. They did not prevail on appeal. They dismissed their appeal. It was settled, and the district court awarded them $900,000. Oh, you're saying the settlement was to reduce the attorney fee? Yeah. Yeah. And you're saying that was abusive? I don't think it was necessarily abusive, but it doesn't show that they are necessarily looking out for the best interests of the class. In that case, they agreed to settle.  But the class had to suffer the delay in order to get that benefit. I guess what I'm saying is the judge approved. Apparently, the judge in that case thought it was proper. And he noted that it was going to accelerate the benefits to the class. Let me address, with the time I have remaining, the substance of the fee award. Well, just going back. Sure. On bad faith, what exactly was the finding based on here? Was it just based on the past practice of the firm, or was there something about this particular case that supported a finding? The district court relied on the pattern that they had engaged in that was the bad practice previously, and the fact that the objection here by Mr. Bandus' sister-in-law, after consultation with her husband, who had objected on four occasions, including one bad occasion where the district court said it was a vexatious objection, that it followed that pattern. And furthermore, that she didn't have any concerns about the fee award. She had concerns about the settlement until she talked to the law firm, and then her objection was only about the fee award. And I think that what the district court reasonably inferred was this was the same pattern continuing that courts have repeatedly noted. Was there not also evidence that she had avoided the deposition? That was Ms. Pence. Yes. The other appellant. Yes. That was a different appellant. What's wrong with Hampe getting advice from the lawyers that the way to go, the thing that's really objectionable here is the exorbitant fee award? I don't think there's anything wrong with getting advice from the lawyers. I think the fact here that out of 76 million class members, we had two people go to attorneys, and they both went to attorneys who have been repeatedly identified as serial objector's counsel who do engage in this bad faith conduct. Well, I guess what I'm struggling with is let's say they'd gone to some lawyer who'd never done this before, and that lawyer said you ought to object to this fee award and see if you can get the Eighth Circuit to adopt a mega fund rule on methodology in place of the Johnson factors. Would that have been bad faith? I don't think it would have been bad faith in that instance. So what's the difference? Even if these guys had a bad history, if they're making an objection that's at least a legitimate legal point. I think it would be bad faith here because it fit the pattern of prior misconduct. But if I could, I would like to turn a couple minutes here. I have a minute left to talk about the fee award. No circuit has adopted this methodological argument that they're proposing on appeal. The Eleventh Circuit recently rejected the same argument raised by Mr. Klor on behalf of another objector in the Equifax case. The Ninth Circuit, in another case, Mr. Klor raised this methodological argument to the Ninth Circuit, and they rejected it in the optical disk drive case. The Tenth Circuit has rejected it in the Syngenta case. And the Second Circuit, all it said was we're affirming the district court who considered in this case with a $3 billion settlement that a 6.5% fee is reasonable and that it is appropriate for the district court to consider those factors. The district court here, I mean, it considered other awards of similar size. The Fitzpatrick study, and Professor Fitzpatrick put in a declaration explaining some of this at Hampy Appendix 759 that the 17 to 22% is reasonable because his study was the most comprehensive study ever done. Unlike the Eisenberg study, he collected 600 fee awards, both published and unpublished, which had never been done. And he came up with an average that was 17%. And that supports the district court's finding here because this was an extraordinary settlement. It was twice as good as the next best data breach settlement. And the fact that it was obtained quickly only shows that the settlement on its merits is better than all the other settlements, but also that the class is going to get relief sooner. If I don't have any further questions, I see my time is up. Thank you, Your Honors. Very well. Thank you for your argument. Rebuttal, 26 seconds. You may proceed. So they never cited the cases they referred to on the burden of proof being supposedly preponderance as to bad faith, not in their brief at all. So to ask the court an opportunity to file some sort of Rule 28J letter to address those cases, that's completely ambushed by the citation of those cases. Ms. Hampy has never filed a bad faith objection before. She has having a relationship, a familiar relationship with a client is not bad faith. And she, my firm, I personally do not have a history of filing bad faith objections. I have assisted in returning literally tens of millions of dollars to settlement class members around the nation. The optical disk case, which they referred to, was one where we were successful twice on appeal. There's never been any demand of class counsel to pay us any money. All we've ever done from the start is try to get the fees reduced to a more reasonable level. Judge Arnold, you asked, do we assert a specific number? In Hampy's brief, we said a reasonable outer limit multiplier of 5.6 would result in a $45 million fee here, which would still return a substantial, I guess, around $30 million back to the class. And so, of course, if the court wants to remand that, this is also, I think, a reasonable approach. But if the court wants to pick a number, that's the number we would suggest. On your first point, I don't know if Rule 28J is proper since it's not a supplemental authority, but you're welcome to file a motion if you'd like to be heard on something, and then the panel can address your motion. Okay. Well, that's a new one for me, so I'll look into that. What's a new one? Well, I've never filed that sort of a motion after an argument, but happy to do so. Well, it sounds like you want to file a supplemental brief of some kind. Just to address those cases. You've never heard of a motion for leave to file a supplemental brief? Personally, I've heard of that. I've never filed one. That's the concept I had in mind. Right. Okay. Well, thank you, judges. Thank you for your argument. Thank you. Thank you to counsel. Thank you to all counsel. The case is submitted, and the court will file a decision in due course.